In the Matter of the Application of FRANCIS P. BRUNO and Others, Petitioners, for an Order against PAUL J. KERN and Others, Commissioners, Constituting the Municipal Civil Service Commission of the City of New York, Respondents.

Supreme Court, Special Term, New York County, September 12, 1940.

*Albert de Roode*, for the petitioners.

*William C. Chanler, Corporation Counsel [Oscar L. Tucker* of counsel], for the respondents.

PECORA, J. This is an application for an order directing the municipal civil service commission to correct its rating of the answer given by each of the seventeen petitioners to question

No. 34 on a written promotion examination, held on November 2, 1939, for the position of clerk, grade 2, in the civil service of the city of New York. The court is asked to direct the commission to credit each petitioner with having answered the question correctly and to raise his rating from 69 to 70.

Question No. 34 and the instructions for answering it read as follows:

" Items 34 to 53 consist of twenty sentences which may be classified under one of the following categories:

" (A) sentence correct
" (B) incorrect grammar
" (C) incorrect punctuation'
" (D) incorrect spelling
" (E) incorrect choice of words

" Examine each of the sentences carefully. Then, on the correspondingly numbered row on the Answer Sheet, blacken the space between the pair of lines lettered the same as the answer which is the best of those suggested above. All incorrect sentences contain but one type of error. Consider a sentence correct if it contains none of the types of errors mentioned, even though there may be other correct ways of expressing the same thought.

" 34. May I help you with your problem of reorganization of the personnel."

Each of the seventeen petitioners in his answer to the question indicated that the test sentence was incorrectly punctuated with a period, and should have been terminated with a question mark. However, the key or list of correct answers published by the commission states that the sentence is correctly punctuated with the period. (¶ 17 of petition, undenied in answer.)

Efforts on the part of petitioners to persuade the commission to mark their answer as correct have proved unsuccessful. The director of examinations and the commission have taken the position that " although a question mark is frequently permissible in a sentence such as that under discussion, the use of the period is absolutely correct," and that, therefore, petitioners erred in answering that the sentence was incorrectly punctuated.

Had the commission rated petitioners' answers to question No. 34 as correct, they would all have received the minimum passing mark of 70 on the written examination and their names would have been placed on the promotion list which was promulgated by the commission on or about June 14, 1940. In addition to requesting that their answers to question No. 34 be marked as correct, and that they be given a mark of 70, petitioners ask that such mark be averaged with their respective ratings for seniority

and record in service, and that their names be placed upon the promotion list.

Two issues are presented by this proceeding: (1) Whether the petitioners' answers to question No. 34 were properly marked as incorrect; and (2) whether the commission's rating of the answers as incorrect is subject to judicial review even if the answers should have been accepted as correct. These issues will be taken up in the order indicated.

In support of their contention that the test sentence was incorrectly punctuated with a period, and should have terminated with a question mark, petitioners annex responses received to forty-six letters sent to publishers of standard dictionaries, newspapers and magazines, and to authorities connected with such institutions as universities and the New York Public Library. These letters included a complete quotation of the instructions for answering question No. 34, and requested the addressees to give their answers to the question in accordance with such instructions.

All the replies are to the effect that the test sentence is a direct question and should be punctuated with a question mark. Thus the publishers of Webster's New International Dictionary state " the sentence is evidently a direct question, intended by the author to call for assent or declination, and therefore properly to be terminated with a question mark." The publishers of Funk & Wagnall's New Standard Dictionaries write that " the sentence about which you inquire is correctly punctuated with a question mark." Professor George W. Norvell, supervisor of English for the New York State Regents, replies that " I should expect a question mark *instead of a period* at the end of the sentence."

Similar answers were received to letters addressed to twenty-eight of the country's leading universities, including those of Chicago, Cornell, Yale, California, Leland Stanford, Northwestern, Duke and Washington; and also to letters sent to the State Boards of Education of Massachusetts, Connecticut and Delaware, and to the English departments of two New York city high schools. The New York *Times* responded that " since the sentence quoted in your letter of May 4th is a question, it should be followed by a question mark." The editorial department of the New York *Herald Tribune* replied that " We would terminate the sentence you cite with a question mark since it is cast in the interrogative form." The New York *Post* answered that " There should be a question mark at the end of the sentence." The editor of The Reader's Digest declares that " The sentence you quote is unmistakably a question and should accordingly be punctuated with the usual interrogation mark." The chief of the reference department

of the New York Public Library states that "The sentence to which you refer * * * implies a question, and we believe it would require a question mark." The director of the New York *World Telegram* Washington Service Bureau states his opinion to be that "a direct question, such as you submitted, requires punctuation with a question mark at the end;" while Frank O. Colby, who conducts a column in the New York *Post* dedicated to better speech, says: "I do not see how the sentence can be considered as anything but an interrogative sentence. It plainly asks a question and would be properly punctuated with a question mark." Among these forty-six answers was one from Edward J. Kilduff, assistant dean of the New York University School of Commerce, professor of Business English in New York University, editor of Business Terms and Expressions of the New Century Dictionary and author of various works on business English, advanced business correspondence and vocabulary improvement. Dean Kilduff wrote: "In my opinion, the employment of the period after the end of the last word is incorrect. The correct punctuation mark is a question mark. The sentence cited is a complete interrogatory sentence. As such, it must be ended by a question mark. * * * It does not request an action; it asks a question that requires a verbal answer (Yes or No). In other words, it is the usual type of complete interrogatory sentence and, as such, it may not be correctly punctuated at the end by a period."

In attempted justification of its action in marking petitioners' answers as wrong, the commission takes the position that although the sentence could properly have been punctuated with a question mark, the use of the period was *also* permissible. Accordingly, argues the commission, petitioners were wrong when they answered that the sentence was incorrectly punctuated with a period. Attention is called by the commission in this connection to the instruction: "Consider a sentence correct if it contains none of the types of errors mentioned even though there may be other correct ways of expressing the same thought."

Viewed in the light of the imposing array of authorities relied upon by petitioners for the proposition that the sentence was incorrectly punctuated with a period, and that the only correct punctuation would have been a question mark, the commission's effort to establish that it was permissible to terminate the sentence with a period appears feeble. Associate Professor Naugle of Yale and Professor Compton of the College of the City of New York are quoted as stating that the use of the period is permissible; and another professor at New York University as declaring that

" the mood of the construction suggests not so much a question as an offer of assistance." Little weight can, however, be accorded to the view expressed by the scholarly Professor Compton; for, as authority therefor, he quotes a statement in a manual that " A technically interrogative sentence — disguised as a question out of courtesy — but actually embodying a request, does not need an interrogation point." The test sentence does not, however, embody a request for action but, on the contrary, seeks information and calls for a yes or no answer.

All the other opinions cited by the commission in its favor fail to support its ruling that the test sentence may properly be punctuated with a period. Thus, the statement in " Standard Handbook for Secretaries," by Lois Irene Hutchinson, that " If an answer is not expected, and the question is intended as a suggestion or request, no question mark is necessary," is inapplicable to question No. 34 since there is nothing in the sentence to indicate that no answer was expected. On the contrary, the wording of the sentence is such, as all the petitioners' authorities agree, that an answer is obviously expected. As will presently be pointed out, the illustrations used by the author to support the text are clearly distinguishable, for they manifestly expect action rather than a yes or no answer. (Specific reference will presently be made to all the illustrations in the textbooks or manuals relied upon by the commission.)

The next authority cited by the commission is " The Secretary's Handbook," written by two high school English teachers, Taintor and Monro. It states that " A technically interrogative sentence — disguised as a question out of courtesy, but actually embodying *a request* — does not need the interrogation point," and also instructs the reader to " place a period after a request." (Italics the court's.) This work is not an authority for punctuating the test sentence with a period; for, as previously observed, the sentence contains nothing to characterize it as a mere request, but, rather, appears on its face to call definitely for an answer in the affirmative or negative. Indeed, this is recognized by one of the coauthors of this very book — Sarah Augusta Taintor — who has written to petitioners that " The sentence [in question No. 34] is really a a question and should be followed by a question mark."

Equally inapplicable, for similar reasons, are the statements (1) in Brown's " The Secretary's Desk Book," that a rhetorical question framed in the form of a question for the sake of effect does not require a question mark; (2) in Towner's " Correct English " that " after a courteous *request* expressed in interrogative form " (italics the court's) a period should be used; (3) in " Manual of Style,"

published by the Chicago University Press, that a technically interrogative question actually embodying *a request* does not need the interrogation point; (4) in Opdycke's " Get It Right," that a period is put at the end of an interrogative sentence that makes *a request;* and (5) in " The Writers' Index of Good Form and Good English," that a question mark should not be used after a polite *request* phrased as a question.

It is important to note that none of the various treatises above discussed, beginning with that of Hutchinson, makes any reference to the specific sentence involved in question No. 34, as do all petitioners' forty-six authorities. All that these works do is to state as a general principle that a sentence, interrogative in form, which does not call for an answer but in reality is merely a request or either rhetorical or exclamatory in nature, may be punctuated with a period. The *applicability* of this general principle to the test sentence, rather than the correctness of the principle itself, is the point in issue here. The very examples which accompany the texts of the various manuals and handbooks above mentioned, demonstrate their inapplicability to the test sentence: " May we ask for a prompt payment " (payment, not a yes or no answer is called for); " Would it not be well to do it that way " (a rhetorical question — no answer expected); " Will you please send it to this address " (the sending, not a yes or no answer, is anticipated); " May we hear from you promptly " (a prompt reply, not a yes or no answer, is contemplated); " May I have your answer by next Friday " (similar to preceding sentence); " Will you kindly sign and return the inclosed card " (return of the signed card, not an affirmative or negative answer, is asked for); " May I ask you to come early " (early arrival rather than an answer is requested); " May we suggest that you immediately notify the bank to cancel this check " (notification to bank rather than answer asked for); " Were ever words more fitly spoken " (a rhetorical question calling for no answer); " Will you please send us your new fall catalog of musical supplies " (sending of catalog rather than answer contemplated); " Will you please lend me your dictionary " (loan of dictionary rather than answer anticipated); " Will you please close the door " (similar to preceding sentence); " Will you be kind enough to write soon about this " (early writing rather than answer called for).

The only remaining illustration to be found in the manuals cited by the commission is taken from " The Secretary's Handbook," by Taintor and Monro, and is undoubtedly the most closely analogous to the test sentence: " May I *not* help you with your problem of reorganization of the Advertising Department " (italics

the court's). Apparently this very illustration was the model used by the commission for the test sentence. Assuming that the illustrative sentence may properly be punctuated with a period, it would not follow that the test sentence may also be terminated with a period. There is an obvious difference between " May I help you? " and " May I not help you." " May I? " is a request for information, whereas the expression " May I not," suggests that the words are used merely as a courteous accompaniment to the proffered assistance without expecting or awaiting an answer. That the test sentence is quite different from that contained in the illustration, for purposes of punctuation, is confirmed by the fact, previously adverted to, that Miss Taintor, one of the coauthors of the handbook containing the illustration, in her reply to petitioners' letter, stated that the test sentence " is really a question and should be followed by a question mark."

Other than the inapplicable quotations from the handbooks and manuals already discussed, the only authority cited by the commission as supporting its position consists of the statements of the three professors previously referred to, and a quotation from " Successful Letter Writing " by Aline E. Hower, to the effect that " Some authorities hold that a question mark should follow a question of courtesy." What the author meant by " a question of courtesy " is not stated, and no illustrations are given. Whether the test sentence is " a question of courtesy " within the meaning of the text does not appear. Thus, as against the forty-six recognized authorities of various kinds which definitely take the view that punctuation with a period is incorrect, there are really only three who express the opinion that the period is also permissible.

Comparing petitioners' authorities with those of the commission, both as to numbers and quality, it is difficult to escape the conclusion that the overwhelming weight of expert opinion supports the answer of petitioners that the test sentence was incorrectly punctuated with a period instead of a question mark. That the sentence is interrogative in form is not the decisive element; but rather the fact that its contents fail utterly to suggest that no answer is expected, either because the sentence is only rhetorical or exclamatory, or else for the reason that only some act is requested or called for. There is nothing in the sentence " May I help you with your problem of reorganization of the personnel " to indicate that it is not also a question in *substance,* as well as in form.

The fact that the instructions for answering the series of questions in which question No. 34 is found, stated that a sentence was to be considered correct if it contained none of the types of errors mentioned, even though there might be " other correct ways of

expressing the same thought," does not affect the situation. Use of the period is not one of two correct methods of punctuating the test sentence. There is only one correct way, and that is by use of the question mark. It cannot even be said that there are two schools of thought on the subject of whether the use of the period is *also* permissible. The fact that three or four professors of English may favor that view is utterly insufficient to characterize the subject as a controversial one. A much closer division of authority would be necessary for that.

The court has not overlooked the fact that under special circumstances the sentence " May I help you with your problem of reorganization of the personnel " may be used without expecting any answer, in which case punctuation with a period might be permissible. For example, if the person uttering the sentence proceeded simultaneously, without waiting for a response, to assist the person addressed, use of a period instead of a question mark might be proper. Similarly, a gentleman stooping to pick up a handkerchief dropped by a lady and proffering its return with a polite " May I," expects no answer, and if the episode were being described in writing, a period might be permissible. Examples might be multiplied indefinitely. It does not follow, however, that the test sentence, *standing by itself and without anything in the context or elsewhere to indicate that no answer was expected, and that the assistance was being proffered without awaiting a reply,* is correctly punctuated with a period. The point is that the fact that under some special or unusual conditions a sentence, interrogative in form, may not call for an answer, and may, therefore, be properly punctuated with a period, is insufficient justification for the view that the sentence " May I help you with your problem of reorganization of the personnel " may be correctly punctuated with a period, *in the absence of anything in the context or in the instructions to suggest that the sentence was used under such conditions that no answer was expected.*

Nor may the commission derive any comfort in this connection from the instruction " Consider a sentence correct if it contains none of the types of errors mentioned, even though there may be other correct ways of expressing the same thought." " Expressing the same thought " can only refer to subdivision E of the general instructions for answering questions 34 to 53, *i. e.,* incorrect choice of words. However, even if the instruction had read " even though there may be other correct ways of punctuating the sentence," it would not avail the commission; for this language would not be equivalent to an instruction that the candidates were to consider the test sentence correct, even if its punctuation with the period were proper under special and unusual circumstances not disclosed in the sentence itself or elsewhere in the examination paper.

There remains for consideration the question of whether the commission's action in marking as incorrect petitioners' answers to question No. 34 is, even though erroneous, immune to judicial review. It is undoubtedly true, as the commission contends, that the commission's rating of examinations is not subject to judicial review in the absence of bad faith, arbitrariness, illegality or fraud. This rule is applicable not only to the rating of examination papers, but also to the commission's exercise of its many other powers. If, for example, the court were asked to review the rating of answers to questions calling for technical knowledge, e. g., questions relating to engineering, it would undoubtedly decline to interfere with the judgment of the commission's experts unless there were fraud, bad faith, arbitrariness or illegality. It would be sufficient that the experts in their best judgment and with substantial basis for their opinions considered the answers incorrect. A typical case is *Matter of Lynch* (N. Y. L. J. Jan. 5, 1939, p. 48), cited by the commission. In holding that the court would not direct the commission as to what answers should be taken as correct, the court emphasized the fact that " After all the questions and answers may be criticized or defended depending upon which viewpoint is used and what authorities are used as a basis," and, therefore, concluded that the commission's rulings did not necessarily indicate any bad faith on its part. This decision undoubtedly assumed the existence of a substantial division of expert opinion as to the correct answers. This element is lacking here. The court is not wholly powerless under all circumstances to interfere with the commission's rating of examinations. Where the commission marks as incorrect an answer which is clearly and undoubtedly correct, its action in so doing cannot but be regarded as arbitrary, whimsical or capricious; and as such it is subject to judicial review. Were the commission to mark as incorrect an answer of " 4 " to a question calling for the total of " 2 and 2," it could hardly be argued that the courts would be powerless to intervene. Its ruling in the instant case, that the sentence contained in question No. 34 was properly punctuated with a period, although not presenting as extreme a case as that given in the illustration, would seem to fall within the same category. In the court's opinion, the commission in marking as incorrect the answers given by the seventeen petitioners to question No. 34, acted arbitrarily and without reasonable basis. Authority is not lacking for setting aside the ruling of the commission under such circumstances. Thus in *Matter of Krapp* v. *Kern* (255 App. Div. 305; affd., 281 N. Y. 617) and in *Matter of Henry Hudson Parkway Authority* v. *Kern* (167 Misc. 699; affd., 255 App. Div. 770), the courts set aside certifications by the commission of what

were deemed by the commission to be the most appropriate lists for certain positions. None of the various authorities cited in the briefs submitted on behalf of the commission appears to be applicable to the situation here presented. Indeed, most of them recognize the fact that no immunity to a judicial review exists where the conduct of the commission has been so arbitrary, whimsical or capricious as to amount in legal effect or contemplation to bad faith. In one of the cases relied upon by the commission (*Matter of DiFiore*, N. Y. L. J. April 8, 1938, p. 1706) the opinion of the court indicates that it actually examined into the correctness of every answer involved in that controversy.

For the reasons set forth, the motion is granted. Settle order.